[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McIntyre v. McCarty*, Slip Opinion No. 2026-Ohio-1992.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1992

THE STATE EX REL. MCINTYRE, APPELLANT, *v.* MCCARTY, JUDGE, ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McIntyre v. McCarty*, Slip Opinion No. 2026-Ohio-1992.]

*Mandamus—Prohibition—Trial court and trial judges did not patently and unambiguously lack jurisdiction to dispose of charges against an offender that were brought in the same case after the offender was sentenced and convicted of other charges—Offender's two sets of charges concern separate events and the two sets of charges were essentially treated by the court of appeals as separate cases and did not interfere with the court of appeals' ability to reverse, modify, or affirm his appeal of the first set of convictions—Court of appeals' judgment affirmed.*

(No. 2025-0969—Submitted March 24, 2026—Decided June 2, 2026.)

APPEAL from the Court of Appeals for Summit County,

No. 30845, 2025-Ohio-2065.

_____

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellant, Lewis LeRoy McIntyre Jr., was found guilty of aggravated burglary and felonious assault following a criminal trial in the Summit County Court of Common Pleas in 1991. After McIntyre was found guilty of those crimes, the State charged him under the same case number with additional crimes for conduct that occurred during and after trial. McIntyre subsequently pleaded guilty to an amended charge to resolve the new charges in 1992. But when he pleaded guilty, McIntyre had already appealed his convictions for the first set of charges.

{¶ 2} McIntyre, still serving his sentences, has now filed for a writ of prohibition and a writ of mandamus in the Ninth District Court of Appeals against appellees, the Summit County Court of Common Pleas, retired judge Mary Spicer, who presided over his trial-court proceedings in 1991 and 1992, and sitting judge Alison McCarty, who currently presides over his case (collectively, "the trial court"). McIntyre argues that the trial court lacked jurisdiction to resolve the additional charges because it had lost jurisdiction over the case when McIntyre appealed his conviction on the aggravated-burglary and felonious-assault charges. McIntyre seeks writs of prohibition and mandamus vacating his conviction for the additional charges.

{¶ 3} The trial court filed a motion to dismiss, which the court of appeals granted. Because the trial court did not patently and unambiguously lack jurisdiction to accept McIntyre's guilty pleas and sentence him on the second set of charges, we affirm the Ninth District's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *The first set of charges*

{¶ 4} In 1991, McIntyre was indicted on two counts of felonious assault and one count of aggravated burglary, plus specifications. The counts related to the 1990 robbery of two drug houses, during which a child was shot and injured. The charges were docketed as Summit C.P. No. CR-91-01-0135. This opinion refers to these charges as the "first charges" or "first set of charges."

{¶ 5} The case proceeded to jury trial. On August 13, 1991, the jury found McIntyre guilty on the aggravated-burglary count and one of the felonious-assault counts. However, the jury was unable to reach a verdict on the second felonious-assault count. On August 29, the trial court sentenced McIntyre to an aggregate 22- to 46-year prison term for the aggravated-burglary and felonious-assault convictions and on September 9, it issued a sentencing entry. The trial court did not dismiss or otherwise dispose of the unresolved felonious-assault charge on which the jury had failed to reach a verdict. On October 4, McIntyre appealed the convictions and on May 27, 1992, the court of appeals affirmed the trial court's judgment. *State v. McIntyre*, 1992 WL 125251 (9th Dist. May 27, 1992). McIntyre's appellate brief, the State's brief, and the court of appeals' decision contain no mention of the posttrial charges discussed below.

### B. *The second set of charges*

{¶ 6} During his trial, McIntyre left the trial without permission for several days. In addition, a day after the guilty verdict was rendered, he assaulted a person whom McIntyre believed was involved in the underlying robberies. After McIntyre was found guilty on the first set of charges, the grand jury returned a series of supplemental indictments charging McIntyre with, among other things, failure to appear at trial and felonious assault. These supplemental indictments were filed under the same case number as the first set of charges; some were returned before McIntyre was sentenced on the first set of charges and some were returned after.

This opinion refers to these charges as the "second charges" or "second set of charges."

{¶ 7} While McIntyre's appeal from his conviction on the first set of charges was still pending, he resolved the second set of charges by pleading guilty to an amended charge of aggravated assault. The court sentenced McIntyre to an 18-month prison term, which was to be served concurrently with the sentence for the first set of charges. Other than stating that the sentence was to be served concurrently with the previous sentence, the sentencing entry for the second set of charges does not mention the first set of charges. The record does not indicate that McIntyre directly appealed his conviction for the second set of charges.

*C. The 2015 mandamus action*

{¶ 8} McIntyre continues to serve his sentences. He has filed numerous postconviction motions and extraordinary-writ actions challenging his convictions. Pertinent here is a 2015 mandamus action he filed in this court, *State ex rel. McIntyre v. Summit Cty. Court of Common Pleas*, 2015-Ohio-5343 (plurality opinion).

{¶ 9} In that action, McIntyre argued that a final, appealable order had never been issued in Summit C.P. No. CR-91-01-0135, because no single document had resolved all the charges against him. McIntyre argued that he was entitled to a writ compelling the trial court to issue a final, appealable order disposing of all the charges. *McIntyre* at ¶ 1 (plurality opinion). A plurality of this court agreed, noting that "[o]nly one document can constitute a final, appealable order." *Id.* at ¶ 8 (plurality opinion), citing *State v. Baker*, 2008-Ohio-3330, ¶ 17. The opinion stated that because McIntyre's first and second sets of charges were resolved in separate sentencing entries, no single document resolved them. *Id.* at ¶ 9 (plurality opinion). Moreover, the opinion noted that the trial court had never fully disposed of the amended felonious-assault count on which the jury had failed to reach a verdict. *Id.* at ¶ 4-5, 10 (plurality opinion). The opinion stated that "[n]one of the documents

in this case is a final, appealable order." *Id.* at ¶ 9 (plurality opinion). We granted a writ of mandamus and directed the trial court to "issue a final, appealable order disposing of all the charges against McIntyre." *Id.* at ¶ 11 (plurality opinion).

{¶ 10} McIntyre states in his complaint here that following the issuance of the writ of mandamus, the trial court issued "a final appealable order that disposed of all charges" in 2016.[1] He states that the new order "simply memorialized" his 22- to 46-year sentence and 18-month concurrent sentence and gave him credit for time served.

{¶ 11} After entry of the 2016 order, McIntyre appealed his convictions to the Ninth District Court of Appeals. The court of appeals affirmed the convictions and sentences, holding that "the doctrines of res judicata and law of the case" barred it from considering most of McIntyre's arguments because they were or could have been raised in his 1991 direct appeal. *State v. McIntyre*, 2018-Ohio-2001, ¶ 25 (9th Dist.). This court did not accept McIntyre's appeal for review. *State v. McIntyre*, 2019-Ohio-4600.

### D. The current writ action

{¶ 12} In 2023, McIntyre filed the current writ action in the Ninth District Court of Appeals. He argues that he is entitled to a writ of prohibition because the trial court patently and unambiguously lacked jurisdiction to accept his guilty plea and dispose of his second set of charges because his 1991 direct appeal from his first set of convictions was pending at the time of his plea. He also seeks a writ of mandamus directing the trial court to vacate his guilty plea and the entry memorializing the plea and dismissing the remaining indictments.

---

1. Although McIntyre states in his complaint that the Ninth District issued a final, appealable order, he also states in a footnote that that order "failed to dispose of the firearm specification of aggravated burglary." However, we note that the Ninth District held that the order disposed of all charges. *See State v. McIntyre*, 2023-Ohio-2228, ¶ 6-9 (9th Dist.).

**{¶ 13}** The trial court filed a Civ.R. 12(B)(6) motion to dismiss, which the court of appeals granted. 2025-Ohio-2065, ¶ 43-44 (9th Dist.). The court of appeals found that the trial court had jurisdiction to accept McIntyre's guilty plea regarding the second set of charges. *Id.* at ¶ 42.

**{¶ 14}** McIntyre appeals as of right.

## II. LEGAL ANALYSIS

### A. Standard of review and writ requirements

**{¶ 15}** "This court reviews a dismissal under Civ.R. 12(B)(6) de novo." *State ex rel. Brown v. Nusbaum*, 2017-Ohio-9141, ¶ 10. "A court may grant a motion to dismiss for failure to state a claim upon which relief can be granted 'if, after all factual allegations of the complaint are presumed true and all inferences are made in the relator's favor, it appears beyond doubt that he can prove no set of facts entitling him to the' requested relief." *State ex rel. Gideon v. Page*, 2024-Ohio-4867, ¶ 11, quoting *State ex rel. Russell v. Thornton*, 2006-Ohio-5858, ¶ 9.

**{¶ 16}** McIntyre argues that the trial court patently and unambiguously lacked jurisdiction to resolve his second set of charges, and he seeks writs of prohibition and mandamus to vacate and correct the judgment and sentencing entry. "If a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition and mandamus will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Mayer v. Henson*, 2002-Ohio-6323, ¶ 12.

**{¶ 17}** To state a claim for a writ of prohibition, McIntyre must allege that (1) the trial court has exercised or is about to exercise judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of the law. *Gideon* at ¶ 12. However, if the trial court patently and unambiguously lacks jurisdiction, McIntyre need not establish the lack of an adequate remedy in the ordinary course of the law. *Id.* McIntyre does not argue that he lacked an adequate

remedy in the ordinary course of the law—he argues only that the trial court patently and unambiguously lacked jurisdiction over his second set of charges.

{¶ 18} To be entitled to a writ of mandamus, McIntyre must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the trial court to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Manley v. Walsh*, 2014-Ohio-4563, ¶ 18. As a practical matter, McIntyre's mandamus request raises the same legal question as his prohibition action—whether the trial court patently and unambiguously lacked jurisdiction to resolve his second set of charges.

*B. The trial court did not patently and unambiguously lack jurisdiction over the second set of charges*

{¶ 19} Neither the parties nor the court of appeals cite any other case in which a defendant was found guilty of certain crimes and then, after he had been found guilty, was indicted under the same case number for additional crimes that he committed after the start of the trial for his original crimes.

{¶ 20} McIntyre argues that the trial court lacked jurisdiction to resolve his second set of charges once he appealed the convictions from his first set of charges. "Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." *In re S.J.*, 2005-Ohio-3215, ¶ 9. For example, a trial court patently and unambiguously lacks jurisdiction to reduce a jail sentence or modify community control while the sentence is on appeal. *See State ex rel. Dobson v. Handwork*, 2020-Ohio-1069, ¶ 5, 17. The trial court loses jurisdiction while the appeal is pending even if the appeal is not taken from a final, appealable order. *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 2011-Ohio-626, ¶ 16.

{¶ 21} However, a "trial court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from." *S.J.* at ¶ 9. Thus, a trial court may retain jurisdiction on

matters as part of the same case that are unaffected by an appeal. Our decision in *Electronic Classroom* provides an illustrative example. In *Electronic Classroom*, a plaintiff sued a community school for damages and raised multiple claims. During the proceedings, the community school filed a motion to amend its answer to raise a political-subdivision-immunity defense. The trial court denied the motion, and the community school brought an interlocutory appeal of the denial. While the appeal was pending, the case went to jury trial, and the jury returned a verdict against the community school. The community school sought a writ of prohibition from this court prohibiting enforcement of the judgment, which the court granted. *Electronic Classroom* at ¶ 9. This court held that the trial court had patently and unambiguously lacked jurisdiction "to proceed with the trial of any claims that might be subject to [the community school's] immunity defense because those claims were within the appellate court's jurisdiction on review." *Id.* at ¶ 14; *see also id.* at ¶ 18. However, the plaintiff in *Electronic Classroom* had also brought a claim for breach of express contract against the community school, to which the community school did not assert an immunity defense. *Id.* at ¶ 14. The trial court did not patently and unambiguously lack jurisdiction to proceed on the breach-of-express-contract claim, because that claim was not "affected by [the] appeal." *Id.* at ¶ 18.

{¶ 22} Thus, for the trial court in McIntyre's case to have patently and unambiguously lacked jurisdiction to dispose of the second set of charges, that disposition must have interfered with the court of appeals' ability to reverse, modify, or affirm his appeal of the first set of convictions. There was no such interference.

{¶ 23} McIntyre's two sets of charges concern separate events. The first set of charges related to McIntyre's burglary of two drug houses in 1990. The second set of charges related to McIntyre's actions during and shortly after his trial on the first set of charges—i.e., his leaving the trial without permission and, after the trial

had concluded, assaulting a person. Moreover, the parties, the trial court, and the court of appeals essentially treated the two sets of charges as separate cases. The jury issued its verdict on the first set of charges before McIntyre had been indicted on the second set of charges. The prosecutor and defense counsel mentioned the second set of charges at the sentencing hearing for the first set of charges, but the judge did not reference the second charges when issuing the sentence for the first charges. The trial court's two sentencing entries do not mention each other, except for a statement in the second sentencing entry that its sentence is to be served concurrently with the sentence for the first charges. And the parties' briefs and the court of appeals' decision on the 1991 direct appeal from the convictions on his first set of charges do not even mention the second set of charges.

{¶ 24} McIntyre nevertheless argues here that some of the issues raised on appeal from his convictions on his first set of charges were intertwined with his second set of charges. First, he argues that the resolution of one of his points of error on direct appeal in 1991 could have affected his plea deal on his second set of charges. In the second set of charges, McIntyre was charged with failure to appear at trial, a violation of R.C. 2937.29. McIntyre asserts that he left court to find a witness, whom he claims would have testified in his defense against the first set of charges. He states that the trial court should have waited to resolve the failure-to-appear charge until the court of appeals had ruled on whether the trial should have been delayed. He states that if the court of appeals had held that he had left the trial for a good reason, he might have obtained a better plea deal in the bargain that resulted in the dismissal of his failure-to-appear charge.

{¶ 25} But any relationship between the arguments McIntyre made in his 1991 direct appeal of his convictions on the first set of charges and his failure-to-appear charge was highly attenuated. His 1991 direct-appeal argument concerned whether the trial court's allowing the trial to proceed in his absence violated his constitutional rights. His failure-to-appear charge concerned whether he had

appeared at trial. Here, McIntyre posits that he could not have been convicted for failure to appear while his 1991 direct appeal of his first set of charges was still pending, but he offers no authority in support of that proposition.

{¶ 26} Second, McIntyre argues that the 1991 direct appeal of his convictions for the first set of charges was also intertwined with the charges that arose from his posttrial assault. McIntyre contends that the police viewed the assault victim as a possible suspect in the robberies for which McIntyre was found guilty in the first set of charges and that, if there had been a trial on the posttrial-assault charges, he then could have cross-examined the victim about the robberies. But McIntyre assaulted the victim *after* the robbery trial had concluded—McIntyre could not have been indicted or tried for the assault until after the trial on his first set of charges had concluded, because he did not commit the assault until after that trial had concluded. The charges related to McIntyre's posttrial assault are unrelated to the first set of charges.

{¶ 27} Third, McIntyre argues that the second set of charges are part of the same action as the first set of charges because they were initiated through supplemental indictments under the same case number, even if the second charges were based on different conduct. He argues that because the second charges are part of the same action, the trial court lost jurisdiction to dispose of them while the convictions on his first set of charges were being appealed. In support, McIntyre invokes *State v. Craig*, 2020-Ohio-455. In *Craig*, this court held "that a conviction on one count of a multicount indictment is not a final, appealable order when other counts remain pending after a mistrial." *Id.* at ¶ 21. McIntyre argues that our decision in *Craig* supports the proposition that his appeal of his convictions for the first charges was not a final, appealable order, because the jury had hung on one of his charges.

{¶ 28} This argument lacks merit. Whether McIntyre's sentencing order was final and appealable is immaterial to the question whether the trial court

patently and unambiguously lacked jurisdiction to accept McIntyre's guilty plea on his second charges. *See Electronic Classroom*, 2011-Ohio-626, at ¶ 16 ("the mere fact that [the community school] perfected the appeal from an order that the court of appeals ultimately determined not to be a final, appealable order did not confer authority on the trial court to proceed on those claims that could be affected while the appeal was pending"). Indeed, a plurality of this court already determined that the sentencing order was not a final, appealable order, and this court granted a writ of mandamus requiring the trial court to issue a final, appealable order resolving all the charges against McIntyre. *McIntyre*, 2015-Ohio-5343, at ¶ 9 (plurality opinion).

{¶ 29} As part of our analysis in *Craig*, we noted that one category of final, appealable orders are those that determine an *action*, *Craig* at ¶ 12, and that "[t]he word 'action' has typically been understood to refer to the entire legal proceeding, regardless of how many claims or charges are included in the proceeding," *id.* at ¶ 13. McIntyre argues that *Craig* also supports his contention that his first and second sets of charges were all part of the same action. Admittedly, it is not clear why the prosecutor and grand jury initiated the second set of charges through supplemental indictments under the same case number as the first set of charges. But the question in this writ action is not whether the charges were all part of the same action, but whether the trial court's disposition of the second set of charges was "inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from," *S.J.*, 2005-Ohio-3215, at ¶ 9. And, as discussed above, it was not.

{¶ 30} Despite the fact that both the first and second sets of charges against McIntyre were filed under the same case number, the second set of charges related to events that occurred during and after the trial for his first set of charges, and the sets of charges are not closely related, legally or factually. Under these

circumstances, the trial court did not patently and unambiguously lack jurisdiction to dispose of McIntyre's second set of charges.

### III.  CONCLUSION

{¶ 31} The trial court did not patently and unambiguously lack jurisdiction to dispose of McIntyre's second set of charges while the appeal of his first set of charges was pending.  As such, he has not stated a claim for writs of prohibition or mandamus, and the Ninth District Court of Appeals correctly dismissed his case.

Judgment affirmed.

_____

Stephen P. Hanudel, for appellant.

Elliot Kolkovich, Summit County Prosecuting Attorney, and Jennifer M. Piatt, Assistant County Prosecuting Attorney, for appellees.

_____